Matthew G. YEAGER, Appellant,

v.

DRUG ENFORCEMENT ADMINISTRA-
TION, et al.

Nos. 79–2275, 80–2465.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 7, 1981.

Decided May 14, 1982.

William V. DePaulo, Washington, D.C., for appellant.

Marc Johnston, Atty., U. S. Dept. of Justice, Washington, D.C., with whom Stuart E. Schiffer, Acting Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., Washington, D.C., at the time the brief was filed, and Leonard Schaitman, Atty., U. S. Dept. of Justice, Washington, D.C., were on the brief, for appellees. Kenneth M. Raisler and Lynne K. Zusman, Asst. U. S. Attys., Washington, D.C., also entered appearances for appellees.

Before ROBINSON, Chief Judge, and TAMM and GINSBURG, Circuit Judges.

TAMM, Circuit Judge:

This case presents several novel and important questions concerning the interpretation of the Freedom of Information Act (FOIA or the Act), 5 U.S.C. § 552 (1976), as it applies to agency records stored in computers. The central claim is that the FOIA requires the Drug Enforcement Administration (DEA or the Agency) to use so-called "disclosure-avoidance techniques" in fulfilling its duty to release reasonably segregable nonexempt portions of records. Because we find that the FOIA imposes no agency duty to employ such computer techniques and appellant concedes that the records in question are otherwise exempt, we affirm the district court.

## I. BACKGROUND

In 1976 appellant Matthew G. Yeager filed a complaint in the United States District Court for the District of Columbia seeking to compel the DEA [1] to release four complete record systems and the technical records relating to each system.[2] The Agency denied that Yeager was entitled to

---

1. The Drug Enforcement Administration (DEA or Agency), the Director of the DEA, the Department of Justice, and the Attorney General of the United States were named defendants in the district court and are appellees here. We will refer to appellees collectively as the DEA or the Agency. Although the Government argued before the district court that not all named defendants were proper parties, the question has not been pursued before this court; accordingly, we do not address that issue. *See* 5 U.S.C. § 552(a)(4)(B) (1976); *Providence Journal Co. v. FBI*, 460 F.Supp. 778, 782 n.2 (D.R.I.1978), *rev'd on other grounds*, 602 F.2d 1010 (1st Cir. 1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1015, 62 L.Ed.2d 752 (1980).

2. Yeager filed a series of Freedom of Information Act (FOIA or the Act) requests and exhausted his administrative remedies. After some initial misunderstanding concerning the scope of the requests, the parties stipulated to the precise contours of the records requested. This stipulation provided the claims upon which the case finally proceeded to judgment. Yeager's complaint claimed entitlement to the following records:

a) A copy of the record layout outlining the available data stored either electronically or on data cards for NADDIS, KISS, PATHFIN-

DER and NIMROD. This is analogous to a codebook ("Data Dictionary") and a description of the codes used in all the fields (i.e., Sex (1) = Male, (2) = Female, (3) = Unknown).

b) A description of the computer format in which the data is stored on the computer. This is defined to consist of the code in which the data is written, record size, coding technique, blocking size, the number of bytes per inch, and parity.

c) A cost estimate for obtaining either punched cards or magnetic tape copies of data stored in NADDIS, KISS, PATHFINDER and NIMROD.

d) Magnetic tape or punched card copies of the substantive data stored in NADDIS, KISS, PATHFINDER and NIMROD with personal identifiers deleted.

*See* Plaintiff's Second Amended Complaint at 2, *Yeager v. DEA*, Civ. No. 76–0973 (D.D.C. Oct. 30, 1980); Appendix (App.) at 15. NADDIS is an acronym for the Narcotics and Dangerous Drugs Information System. KISS, PATHFINDER, and NIMROD are not acronyms.

any portion of the records requested. Thereafter, Yeager moved the court to require the DEA to file a *Vaughn* index,[3] and the Agency, arguing primarily that the records had not been "reasonably described" within the meaning of subsection (a)(3),[4] moved for summary judgment.

On May 1, 1979, the district court granted both motions in part. Memorandum Order, *Yeager v. DEA*, Civ. No. 76–0973 (D.D.C. May 1, 1979) [hereinafter *Memorandum Order*]; Appendix (App.) at 39. The court rejected the DEA's argument that the requested records had not been "reasonably described," *id.* at 6; App. at 44, but found that three of the requested record systems, KISS, PATHFINDER, and NIMROD, were exempt in their entireties under exemptions 7(A), (C), (D), and (E) of the FOIA.[5] *Id.* at 6–8; App. at 44–46. The district court found that the fourth record system, the Narcotics and Dangerous Drugs Information System (NADDIS), contained both exempt and arguably nonexempt data. The court therefore granted Yeager's motion for a *Vaughn* index as to NADDIS. *Id.* at 8; App. at 46.

In addition, the court addressed Yeager's request for the technical records associated with each system. These records included the codebook and computer format necessary for Yeager to access data if the records were released to him on magnetic tape.[6] The DEA claimed that such records fell within the ambit of exemption 2 because they related solely to the internal procedures of the Agency.[7] The district court rejected this position as an unduly narrow reading of the exemption. *Id.* at 8–9; App. at 46–47. If the substantive records are disclosed on magnetic tape, the court reasoned, the technical documents necessary to "read" the released information are more than mere internal agency material. *Id.* at 9; App. at 47.

In response to the court's order, the DEA filed its *Vaughn* material consisting of one public affidavit, two *in camera* affidavits, and an *in camera* memorandum study.[8] The DEA agreed to release "those [information categories] which are not personal, occupational and/or geographical in nature." Affidavit of John G. Evans at ¶ 5, *Yeager v. DEA*, No. 76–0973, (D.D.C. October 30, 1980). Such information includes sex, race, and date of birth. The DEA also offered to provide "yes or no" entries for the following categories: Prior Criminal Record; Prior Drug Arrest; Illegal Alien; Drug Abus-

---

3. In order to provide for proper judicial review and more adequate adversarial testing of an agency's claim of exemption, this court, in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), outlined procedures whereby a district court may require an agency to itemize and index the contents of withheld records. *Id.* at 827; *see* page 324, *infra*.

4. Section 552(a)(3) provides in part: "[E]ach agency, upon any request for records which (A) reasonably describes such records ... shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3) (1976).

5. Subsection (b) of the FOIA contains nine exemptions. Exemption 7 provides that the Act does not apply to matters that are:

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

5 U.S.C. § 552(b)(7) (1976).

6. KISS is a manual indexing system of notch-edged cards. Because the system is no longer in use, the DEA provided Yeager with the technical data, more in the nature of an instruction manual, on KISS. Memorandum Order at 8, *Yeager v. DEA*, Civ. No. 76–0973 (D.D.C. May 1, 1979 [hereinafter *Memorandum Order*]; App. at 46.

7. Exemption 2 provides that the FOIA does not apply to records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2) (1976).

8. *See* note 20 and accompanying text, *infra*.

er; and Prior Drug Convictions. *Id.* Release of all other categories, DEA claimed, "will jeopardize some ongoing investigations, could tend to identify suspects, would identify certain persons with unique occupations, and could invade the privacy of third persons." *Id.* at ¶ 13.

Yeager filed a motion requesting that his counsel be allowed access to the *in camera* documents. Several months later, Yeager moved in the district court for the appointment of a special master to assist the court in understanding the technical aspects of the case. The DEA renewed its motion for summary judgment as to the NADDIS system. In opposing summary judgment, Yeager relied primarily on the argument that the segregation duty imposed by the FOIA requires an agency to use all available means to facilitate the disclosure of information. Thus, Yeager reasoned, the DEA was required to use computer "disclosure-avoidance" techniques in fulfilling his request.[9]

On October 30, 1980, the district court denied both of Yeager's motions and granted summary judgment for the DEA. Memorandum Order, *Yeager v. DEA*, Civ. No. 76–0973 (D.D.C. October 30, 1980) [hereinafter *Final Order*]; App. at 52. The

court found that disclosure of the contested information elements, or combinations of those elements, "could reasonably be expected to lead to the identification of subjects in the NADDIS system." *Id.* at 6; App. at 57. Yeager's argument that the DEA has a duty to use its computer capabilities to provide the information in a form that would make the material nonexempt was rejected as "beyond the statutory directive." *Id.* at 8; App. at 59. In effect, the district court held that computer-stored agency records need be treated no differently than records maintained in manual filing systems. Yeager now appeals both district court orders.[10]

On appeal, Yeager renews his argument that the duty to segregate nonexempt material requires the DEA to use its computer capabilities to employ "disclosure-avoidance" techniques. The failure of the DEA to submit evidence on the application of such techniques to the NADDIS records and the failure of the district court to obtain the opinion of an independent expert on the feasibility of these techniques, Yeager contends, mandate reversal of the summary judgment that the withheld NADDIS records are exempt.

---

9. Disclosure-avoidance techniques have been developed to facilitate the release of statistical information so that the information cannot be traced to a specific individual. Such techniques include "collapsing" or "compacting," which involve expressing specific information, such as a date or a city, in more general terms, such as a ten-year span or a geographic region. *See* Memorandum Opinion at 3, *Yeager v. DEA*, Civ. No. 76–0973 (D.D.C. Oct. 30, 1980) [hereinafter *Final Order*]; App. at 54.

10. It is well settled that Fed.R.Civ.P. 56 does not itself make an order granting summary judgment appealable. Such an order is considered interlocutory unless it is a final judgment or made appealable by statute. *See* 6 Pt.2, J. Moore & J. Wicker, Moore's Federal Practice § 56.20[4] (2d ed. 1976). Where multiple claims are involved, Rule 54(b), Fed.R. Civ.P. 54(b), must be consulted. That rule provides the district court with the authority to "direct the entry of a final judgment as to one or more but fewer than all of the claims . . . upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." *Id.* Rule

54(b) further provides that absent such an express direction, "any [such] order . . . shall not terminate the action as to any of the claims . . . and the order . . . is subject to revision at any time before the entry of judgment adjudicating all the claims . . . ." *Id.*

The district court's order of May 1, 1979, contained no express determination as contemplated by Rule 54(b). Moreover, that order is not otherwise appealable. *See* 28 U.S.C. §§ 1291, 1292 (1976). Accordingly, Yeager's appeal from the May 1, 1979, order—this court's docket number 79–2275—was improperly taken and is hereby dismissed.

Our ruling on this procedural matter does not, of course, limit the issues that Yeager may properly present to this court. The district court's order of October 30, 1980, entered judgment for DEA and dismissed Yeager's complaint with prejudice. The findings and conclusions of the May 1, 1979, order became final with the entry of judgment. Accordingly, both orders are properly before us in the appeal from the October 30, 1980, order under our docket number 80–2465.

Yeager also challenges the district court's determination that "some" risk of disclosure of identities justifies the exemption. Yeager further argues that the agency's burden in deleting exempt material is irrelevant to a determination that material is not "reasonably segregable." Yeager also alleges that the DEA's *Vaughn* submission did not merit *in camera* treatment and that his counsel was improperly denied access to these materials. Finally, Yeager argues that summary judgment on the exempt status of the PATHFINDER, NIMROD, and KISS systems was erroneous.

Although the Agency ultimately prevailed in the district court, several issues raised there were decided adversely to the DEA. The Agency now wishes this court to address the contention that the request for four entire systems of records is overbroad, and the records are thus not "reasonably described" as required by the Act. The DEA also argues that the requested technical records related to the computer systems are exempt as internal agency records. In addition, the DEA contends for the first time on appeal that Yeager is not entitled to any records in the form of magnetic tape. We address each of these contentions in turn.

## II.   ANALYSIS

▇  The purposes and policies underlying the FOIA are well known and need not be reiterated here except to say that the Act imposes a duty upon agencies to disclose their records. The limited exemptions provided in the Act, 5 U.S.C. § 552(b) (1976), are to be "construed narrowly, in such a way as to provide the maximum access consonant with the overall purpose of the Act." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). The burden of establishing that a particular record, or a portion thereof, falls within one of the enumerated exemptions lies with the agency. 5 U.S.C. § 552(a)(4)(B). This burden requires the agency to provide more than conclusory allegations of possible harm. *Vaughn*, 484 F.2d at 825–26; *Mead Data Central, Inc. v. Department of Air Force*, 566 F.2d 242, 258 (D.C.Cir.1977). The agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of the withheld document to which they apply." *Mead Data Central*, 566 F.2d at 251.

In 1974 Congress amended the FOIA by adding, *inter alia*, a provision explicitly requiring that when a document contains both exempt and nonexempt material, the nonexempt material must be disclosed if "reasonably segregable." [11] The segregation requirement, in conjunction with *Vaughn* indexing and the provision of the Act that allows *in camera* review of the requested documents,[12] forecloses the possibility that an agency's sweeping claim of blanket exemption for any record or group of records will escape intensive court scrutiny.

### A.   *The Segregation Duty*

The primary question presented in this case concerns the extent to which an agency is required to employ its computer capabilities in fulfilling its duty to segregate and release nonexempt material. It cannot be gainsaid that computers have become an integral part of the functioning of our society. Both private and government entities use the storage, processing, and retrieval capabilities of computers to improve organizational efficiency. The DEA has developed sophisticated computer software in order to increase the efficient use of the vast amount of information gathered by its

---

**11.**  Subsection (b) of the Act was amended to provide:

Any reasonably segregable portion of a record shall be provided to any person request-ing such record after deletion of the portions which are exempt under this subsection.

5 U.S.C. § 552(b) (1976).

**12.**  5 U.S.C. § 552(a)(4)(B) (1976).

agents, provided by informants and witnesses, and obtained from other sources.[13]

■ Although it is clear that Congress was aware of problems that could arise in the application of the FOIA to computer-stored records,[14] the Act itself makes no distinction between records maintained in manual and computer storage systems. The Senate Report on the 1974 amendments, in the sole reference to computer-stored records, noted that "[w]ith respect to agency records maintained in computerized form, the term 'search' would include services functionally analogous to searches for records maintained in conventional form." S.Rep. No. 854, 93d Cong., 2d Sess. 12 (1974); *reprinted in* House Committee on Government Operations and Senate Committee on the Judiciary, Freedom of Information Act and Amendments of 1974: Source Book, 94th Cong., 1st Sess. 164 (Joint Committee Print 1975) [hereinafter "Source Book"]. It is thus clear that computer-stored records, whether stored in the central processing unit, on magnetic tape or in some other form, are still "records" for purposes of the FOIA. *See Long v. IRS,* 596 F.2d 362, 365 (9th Cir. 1979), *cert. denied,* 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980). Although accessing information from computers may involve a somewhat different process than locating and retrieving manually-stored records, these differences may not be used to circumvent the full disclosure policies of the FOIA. The type of storage system in which the agency has chosen to maintain its records cannot diminish the duties imposed by the FOIA.

■ It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 161–62, 95 S.Ct. 1504, 1521–22, 44 L.Ed.2d 29 (1975). A requester is entitled only to records that an agency has in fact chosen to create and retain. Thus, although an agency is entitled to possess a record, it need not obtain or regain possession of a record in order to satisfy a FOIA request. *Forsham v. Harris,* 445 U.S. 169, 186, 100 S.Ct. 978, 987, 63 L.Ed.2d 293 (1980); *Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 152, 100 S.Ct. 960, 969, 63 L.Ed.2d 267 (1980).

■ The argument that a document with some information deleted is a "new document," and therefore not subject to disclosure, has been flatly rejected. *Long,* 596 F.2d at 366. This is true even if all but one or two items of information have been deleted. *Disabled Officers' Association v. Rumsfeld,* 428 F.Supp. 454, 457 (D.D.C. 1977). Agencies are not, however, required to commit to paper information that does not exist in some form as an agency "record." Thus, they need not write an opinion or add explanatory material to a document. *Sears, Roebuck & Co.,* 421 U.S. at 161–62, 95 S.Ct. at 1521–22.

13. At the time of the filing of the original complaint in this case in 1976, there were approximately 600,000 individual records within the NADDIS computer system alone. There are now well over one million such records. Brief for Appellees at 7. The DEA estimates that each week 10,000 names contained in foreign and domestic investigation reports are processed against the NADDIS data base, resulting in the creation of approximately 3,500 new records. *Id.*

14. *See* S.Rep. No. 854, 93d Cong., 2d Sess. 12 (1974) *reprinted in* House Comm. on Government Operations and Senate Comm. on the Judiciary, Freedom of Information Act and Amendments of 1974: Source Book, 94th Cong., 1st Sess. 164 (Joint Committee Print 1975) [hereinafter Source Book]. In hearings relating to S.1142, an early version of the bill that became the 1974 amendments to the FOIA, it was suggested that computer experts within the government would possess "an intimidating power to dismiss requests for computerized data as either non-feasible (no programs exist to retireve [sic] such information), or too time-consuming and therefore too costly." 2 *Freedom of Information: Hearings Before the Subcomm. on Intergovernmental Relations of the Senate Comm. on Government Operations and the Subcomms. on Separation of Powers and Administrative Practice and Procedure of the Senate Comm. on the Judiciary,* 93d Cong., 1st Sess. 99, 106–07 (1973) (statement of Harrison Wellford, Center for the Study of Responsive Law).

The case law in this area, however, is not dispositive of the issues we address in this case. We confront neither an agency claim that merely deleting exempt information results in a new document nor a request that the DEA, as an original matter, commit to paper an opinion or explanatory material. We have before us, rather, a hybrid of both concepts. The DEA has compiled and retained the records containing the information requested. The form in which the information currently exists in the records, however, renders it exempt; Yeager argues that the FOIA requires the DEA to modify that *form*.

■ Yeager has requested the substantive content of the entire NADDIS computer system—over one million records on suspects, drug offenders, informants and witnesses.[15] It is not contested that each record within the system is an "investigatory record[ ] compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7) (1976). The sole focus of the initial inquiry is whether the material is exempt or nonexempt. If it appears that the record contains nonexempt portions, only then is it subject to the further determination of whether it is "reasonably segregable."[16] Most FOIA cases deal with the often difficult question whether withheld material falls within the scope of the claimed exemption.

■ On appeal, Yeager does not dispute the exempt status of the contested "soft-core" identifiers as they now appear in the records; rather, he argues that the withheld information should be viewed as it would exist if "compacted." If so viewed, Yeager contends, the information is non-exempt, must be segregated from exempt data, and released under the FOIA. Under Yeager's reasoning, "compacting" is simply another method of deletion and is therefore required by the FOIA. In some sense, of course, if exempt information is altered in such a way that it no longer falls within a specific exemption, then the quality that made the information exempt has been "deleted." We are unwilling, however, to engage in the kind of conceptual gerrymandering of the boundaries of agency duty that such a result would require.

The FOIA does not contemplate imposing a greater segregation duty upon agencies that choose to store records in computers than upon agencies that employ manual retrieval systems.[17] The legislative history

---

**15.** As could be expected, the records contain all the information on these individuals that the DEA has been able to garner. Each record contains standard information "fields" in which particular data concerning the person is entered, if available. These fields include such information as name, address, age, race, sex, occupation, and location of criminal activity. Information that either supplements a standard entry or does not fit into a standard category is entered in a general "remarks" section. Name and address, as well as any other category such as social security number, that would directly identify an individual, is considered a "hard-core" personal identifier. Other information categories, such as occupation or geographical location, that could aid in the indirect identification of a person are known as "soft-core" identifiers. It is conceded that the "hard-core" identifiers and the "remarks" section are exempt from disclosure; only certain "soft-core" identifiers are the subject of this controversy.

**16.** The precise meaning of the term "reasonably" when used in conjunction with "segregable" has not yet been settled. Most interpretations connect it with the concept of intelligibility, *see* Attorney General's Memorandum on the 1974 Amendments to the FOIA at 14–15;

SOURCE BOOK at 524–25. This court looks to a combination of intelligibility and the extent of the burden in "editing" or "segregating" the nonexempt material. *See Simpson v. Vance*, 648 F.2d 10, 17 (D.C.Cir.1980); *Mead Data Central, Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 & n.55 (D.C.Cir.1977). One court has determined that the costs of editing are not relevant unless "so extreme that segregation of revealable material is unreasonable as a matter of law." *Long v. IRS*, 596 F.2d 362, 367 (9th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980). Because we find no duty to employ "compacting" techniques, we do not decide what impact, if any, the extent of the burden on an agency may have on such a duty.

**17.** This is not to say, of course, that computerized recordkeeping has no impact on the application of the FOIA. For example, to the extent that an agency's "burden" in "segregating" nonexempt from exempt material may be relevant—an issue we do not address—the use of computer capabilities may be relevant in terms of the extent of the effort expended or the costs involved.

indicates that the "reasonably segregable" provision was enacted to remedy the situation in which an agency seeks to withhold an entire record because a portion of it contains exempt information.[18] This is, of course, a situation far different from the one presented by this record. The legislative history of the segregation provision, therefore, provides no support whatsoever to Yeager's unique interpretation.

The interpretation suggested by Yeager may be desirable in terms of full disclosure policy and it may be feasible in terms of computer technology; these factors notwithstanding, however, we are not persuaded that Congress intended any manipulation or restructuring of the substantive content of a record when it commanded agencies to "delete" exempt information. We need not decide whether the government's interest in confidentiality is as well served by "compacting" as by "deleting" information; Congress has already determined that "*deletion* of [exempt] information would provide *full protection* for the purposes to be served by the exemption." S.Rep. No. 854, 93d Cong., 2d Sess. 32; Source Book at 184 (emphasis added). The fact that the public is deprived of information that might otherwise have been available cannot be the basis for the imposition of greater duties than those required by the Act itself. *Kissinger*, 445 U.S. at 152, 100 S.Ct. at 969; *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 192, 95 S.Ct. 1491, 1504, 44 L.Ed.2d 57 (1975); *Sears*, 421 U.S. at 161–62, 95 S.Ct. at 1521–22. The Act "deals with 'agency records,' not information in the abstract." *Forsham*, 445 U.S. at 185, 100 S.Ct. at 987. A requester must take the agency records as he finds them.

Accordingly, we decline Yeager's invitation to "view the availability of disclosure-avoidance techniques as simply defining with more clarity the manner in which mi-

crodata information might be released." Brief for Appellant at 53. This invitation should be extended to Congress rather than to this court. *Grumman Aircraft*, 421 U.S. at 192, 95 S.Ct. at 1504.

### B. *Related Claims*

In light of our resolution of the segregation duty issue, we can dispose of several of Yeager's other claims in summary fashion. The extent of the segregation duty is a question of law; the DEA's *Vaughn* submissions were not deficient for failure to index the contested material under the assumption that disclosure-avoidance techniques applied. For the same reason, the district court did not abuse its discretion in failing to seek an independent expert opinion; as a question of law, the resolution was within the competence of the court.

Yeager's claims that the district court employed improper standards in finding the withheld NADDIS materials exempt must also fail. Yeager attacks the district court's finding that even if the material was "compacted" it would be exempt because "some likelihood that release could result in identification of individuals" would remain. *Final Order* at 8 n.7; App. at 60 n.7. We need not reach that question, however. The district court found that disclosure of the contested material, in its present form, "could reasonably be expected to lead to the identification of subjects in the NADDIS system." *Final Order* at 6; App. at 57. This was the proper standard. "The District Court has discretion to determine what information, other than name and address, poses a risk of identifying a[n] [individual] and how great that risk is." *Neufeld v. Internal Revenue Service*, 646 F.2d at 661, 665 (D.C.Cir.1981). It is the function of the district court to determine what degree of risk is acceptable in light of

---

18. The Senate Report cited with approval several cases where, faced with such an agency claim, courts ordered deletion of exempt information and disclosure of the remainder of the document. S.Rep. No. 854, 93d Cong., 2d Sess. 31; SOURCE BOOK at 183, *citing Wellford v.*

*Hardin*, 315 F.Supp. 768 (D.D.C.1970); *Grumman Aircraft Engineering Corp. v. Renegotiation Board*, 425 F.2d 578 (D.C.Cir.1970); *Bristol-Myers Co. v. F.T.C.*, 424 F.2d 935 (D.C.Cir. 1970).

the purposes that underlie the creation of the exemption. The district court properly exercised that function in this case.

Yeager's argument that the district court improperly took account of the administrative burden associated with deletion in determining whether the contested material was exempt is similarly meritless. The basis for the court's judgment was that the material, as it exists in the DEA's records, is exempt and that the Act imposes no duty to employ "compacting." The court compared the processes and results of "deleting" and "compacting" and determined that "compacting" involved a different and potentially greater burden than deletion. *Final Order* at 8; App. at 59. The district court's able analysis clearly questioned only whether "compacting" was a duty under the Act.

### C. *The In Camera Vaughn Index*

■ We find Yeager's two remaining claims concerning the NADDIS records more troublesome. He asserts that the DEA's *Vaughn* submissions did not warrant *in camera* treatment and that his counsel was improperly denied access to these documents. A district court has "inherent discretionary power" to allow access to *in camera* submissions where appropriate. *Hayden v. National Security Agency/Central Security Service*, 608 F.2d at 1381, 1386 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980). Normally the denial of such access is completely within the discretion of the court. This is not the usual case, however, because the documents to which access was denied consisted of the major portions of the DEA's *Vaughn* itemization.

In *Vaughn*, this court noted that the "lack of knowledge by the party seeing [sic] disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." 484 F.2d at 824. We outlined "a system of itemizing and indexing that would correlate statements made in the Government's refusal justification with the actual portions of the document." *Id.* at 827. We noted that under this system, "[o]pposing counsel should consult with a view toward eliminating from consideration those portions that are not controverted and narrowing the scope of the Court's inquiry." *Id.* The procedures outlined were intended not only to assure that the burden of justifying claimed exemptions remained with the agency, but also to ensure that "a more adequate adversary testing [would] be produced." *Id.* at 828; *see Ray v. Turner*, 587 F.2d 1187, 1192 (D.C.Cir.1978).

■ In prior cases, we have found that submission of *in camera* affidavits may be appropriate under some circumstances. *Allen v. CIA*, 636 F.2d 1287, 1298 n.63 (D.C. Cir.1980). The district court, however, should create as complete a public record as possible before following this course. *Phillippi v. CIA*, 546 F.2d at 1009, 1013 (D.C.Cir. 1976). Because such submissions do not permit the plaintiff an opportunity to respond, these procedures "should be employed only where absolutely necessary." *Allen v. CIA*, 636 F.2d at 1298 n.63. This is particularly true where, as here, the submissions sought to be accorded *in camera* treatment constitute the heart of the agency's *Vaughn* index. Allowing a nonpublic *Vaughn* statement, to which plaintiff has no access, places the plaintiff in the anomalous position of being unable to argue with "desirable legal precision for the revelation of the concealed information," *Vaughn*, 484 F.2d at 823, and eviscerates one of the primary purposes of the indexing requirement.

■ Thus far, this court has countenanced the filing of *in camera Vaughn* statements only in cases involving the national security and, even then, only when the government's public filings adequately explained why the secrecy concerns were greater than in most FOIA cases. *Hayden*, 608 F.2d at 1385. We noted that "[i]n most other types of cases, a public *Vaughn* itemization does not compromise secrecy, because the contents of the requested documents are not thereby disclosed, and it is only the *substantive content* which is allegedly exempt from disclosure." *Id.* (emphasis in the

original). Accordingly, we find that an *in camera Vaughn* itemization should be permitted only where the district court explicitly finds that "the interests of the adversary process are outweighed by the [agency's] legitimate interests in secrecy ...." *Id.*

■ In response to the district court's order to file a *Vaughn* statement in the case at bar, the DEA filed three affidavits, one public and two *in camera*. The only justification for the *in camera* submission consisted of the statement in the public affidavit of John G. Evans that "a 'live' (simulated) NADDIS printout example ... is attached as Exhibit A to the [*in camera*] Affidavit.... I am of the opinion that this Exhibit contains sensitive investigative material...."[19] Our review of the record indicates that the Evans affidavit is the only public filing made directly in response to the court's order for *Vaughn* indexing.[20] That document is devoid of any representation that a public *Vaughn* index would compromise any legitimate secrecy need. *See Hayden*, 608 F.2d at 1385. Although it may have been appropriate to file some of the exhibits *in camera*, we are unable to discern from the record any reason that the DEA should have been excused from filing a public *Vaughn* index, other than the fact that the Agency simply did not want to reveal the nature of the information contained in the NADDIS records. Although we do not believe that all the material submitted was properly accorded *in camera* treatment, Yeager no longer disputes the exempt status of the information sought.[21] Accordingly, we find nothing to be gained by remanding the case on this issue.

### D. *Propriety of Summary Judgment*

Finally, Yeager contends that the district court erred in granting summary judgment for the DEA on the ground that the PATHFINDER, NIMROD, and KISS systems are exempt from disclosure. Yeager argues that the issue of exemption was not briefed by the parties and that he was deprived of due process because he was not allowed to present his views on the exemption issue.

The Federal Rules provide that summary judgment may be granted when, upon the basis of the pleadings, depositions, answers to interrogatories, admissions and affidavits submitted, the district court determines that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The DEA moved for summary judgment on the grounds that the records requested were not reasonably described and that, if reasonably described, the records were exempt. *See Memorandum Order* at 4; App. at 63.

■ In *Vaughn*, we noted that "[i]f the factual nature of the documents [was] so clearly established on the record, then the court would inquire no further and would make the legal ruling as to whether they fit within the defined exemption or exemptions." 484 F.2d at 824. Here, the Agency submitted affidavits detailing the nature of the PATHFINDER, NIMROD, and KISS systems.[22] Rule 56(e) provides that "an adverse party may not rest upon the mere allegations or denials of his pleading but his response ... must set forth specific facts

---

19. Affidavit of John G. Evans at ¶ 6, *Yeager v. DEA*, Civ. No. 76–0973 (D.D.C. Oct. 30, 1980).

20. The DEA insists that "a number of public affidavits" were submitted. Brief for Appellees at 42. The Agency does not specify, and we are not willing to guess, which documents the Agency considers to have been filed in response to the *Vaughn* order. A public "Supplemental Affidavit of William Tomlinson" was filed nine months after the DEA's *Vaughn* submission as part of the opposition to Yeager's motion for access to the *in camera* material. This public affidavit could arguably be considered part of the DEA's *Vaughn* submission.

In any event, it is clear that the actual indexing and correlation of exemptions is contained in the *in camera* filings.

21. At oral argument before this court, Yeager's counsel conceded that if disclosure-avoidance techniques did not apply, the NADDIS material was exempt under § 552(b)(7).

22. *See* Affidavit of Stanton Mintz (PATHFINDER), Second Affidavit of William Tomlinson (NIMROD), and Affidavit of Emil H. Levine (KISS), *Yeager v. DEA*, Civ. No. 76–0973 (D.D.C. Oct. 30, 1980).

showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The opposing party's duty is further clarified by the district court's local rules that provide that the party shall file "a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated . . . ." Rules of the United States District Court for the District of Columbia 1–9(h). Yeager's opposition to the summary judgment motion did not question the DEA's characterization of PATHFINDER and NIMROD as intelligence analysis tools used for specific ongoing investigations. Nor was the characterization of the now defunct KISS system challenged.

There was no dispute concerning the factual nature of the PATHFINDER, NIMROD, and KISS systems. Having before him the pleadings, motions, and affidavits of the parties, as well as Yeager's request for *Vaughn* indexing, the district court quite properly considered whether DEA was entitled to judgment as a matter of law. Moreover, Yeager was not foreclosed from raising any questions he may have made concerning the propriety of the district court's May 1, 1979 order. As we have noted, an interlocutory order is subject to revision by the district court any time before final disposition of the case. *See supra* note 9. Consequently, we find Yeager's plea that he has been denied due process without merit.

### E.  *The DEA's Claims*

The DEA reasserts its argument that a request for all the records within a particular computer system is overbroad and thus does not "reasonably describe" those records as required by the Act. This argument was properly rejected by the district court. *Memorandum Order* at 6; App. at 44. Although the number of records requested appears to be irrelevant to the determination whether they have been "reasonably described," appellees' overbreadth argument raises serious questions concerning the allowable scope of FOIA requests.

The linchpin inquiry is whether the agency is able to determine "precisely what records [are] being requested." S.Rep. No. 854, 93d Cong., 2d Sess. 10 (1974); Source Book at 162. *See also* H.Rep. No. 876, 93d Cong., 2d Sess. 5–6 (1974), U.S.Code Cong. & Admin.News, p. 6267; Source Book at 125–26. It is clear in this case that the DEA knew "precisely" which of its records had been requested and the nature of the information sought from those records. *See supra* note 2. Accordingly, we believe that under the circumstances of this case, the requested records were reasonably described in accordance with subsection (a)(3) of the Act.

The DEA also reasserts its argument that the technical records associated with the NADDIS system are exempt under section 552(b)(2) as solely intra-agency records. The district court found that "[i]f Yeager had magnetic tapes of computer records, then the codes necessary to read and use the tapes would become more than intra-agency records." *Memorandum Order* at 9; App. at 47. This issue is thus intertwined with the Agency's argument that the FOIA does not require an agency to release the records in the form of magnetic tape. The DEA did not present the magnetic tape argument to the district court nor did that court order that the material that the DEA has agreed to disclose must be released on magnetic tape. Accordingly, we decline to pass on these issues.

### III.  CONCLUSION

Our treatment of the use of disclosure-avoidance techniques should not be viewed as disapproval of the use of such techniques by agencies. We hold only that the FOIA does not mandate their use in determining whether information is "reasonably segregable." The FOIA does not prohibit an agency from releasing information that falls within any of the delineated exemptions. It only provides the agency the option of withholding the documents. Agencies that store information in computerized retrieval systems have more flexibility in voluntarily releasing information and

should be "encourage[d] . . . to process requests for computerized information even if doing so involves performing services which the agencies are *not required to provide* . . . ." S.Rep. No. 854, 93d Cong., 2d Sess. 12 (1974); Source Book at 164 (emphasis added). As noted by the district court, "[a]s agencies begin keeping more of their records in computerized form, the need to contour the provisions of FOIA to the computer will become increasingly necessary and more dramatic." *Memorandum Order* at 6; App. at 44.

Until Congress determines that the incorporation of provisions specifically tailored to new technology is desirable, the unambiguous language of the statute and the intent expressed by Congress in the accompanying legislative history must control. We find nothing in the history indicating Congressional intent to require anything other than the complete excision of exempt information when the "deletion principle" was formalized in the 1974 amendments.

In sum, we hold that the FOIA does not mandate that the DEA use its computer capabilities to "compact" or "collapse" information as part of its duty to disclose reasonably segregable information. Consequently, Yeager's related claims must also fail. Although the district court should have questioned the propriety of allowing the DEA to file its *Vaughn* index *in camera*, because Yeager now concedes the exempt status of the NADDIS information, there is no reason to remand the case on this issue. Finally, we find that the district court did not err in finding the PATHFINDER, NIMROD, and KISS systems exempt. Accordingly, the judgment of the district court is affirmed.

*It is so ordered.*