*Duffort v. Vermont Agency of Ed. et al.*, No. 380-7-16 Rdcv (Toor, J., May 23, 2017).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
RUTLAND UNIT
CIVIL DIVISION

LOLA DUFFORT,
 Plaintiff

 v.

VERMONT AGENCY OF EDUCATION
and VERMONT STATE BOARD OF
EDUCATION,
 Defendants

Docket No. 380-7-16 Rdcv

RULING ON MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

This is a public records case seeking materials from the State Agency of Education (the Agency) and Board of Education (the Board). Plaintiff is a reporter and seeks materials relating to reports of hazing, harassment and bullying in Vermont schools for the years 2012 through 2015. She has filed a motion for judgment on the pleadings as to Counts I, II and III of the Complaint. A hearing was held on the motion on April 17. Plaintiff is represented by James Diaz and Lia Ernst, Esqs. of the American Civil Liberties Union. Defendants are represented by Melanie Kehne, Esq. of the Attorney General's Office.[1]

Background

The Vermont Access to Public Records Act is the statute at issue here. 1 V.S.A. §§ 315-320. It provides for prompt production of public records upon request unless they are subject to an exemption listed in the statute. Id. at § 318. The defendants are both public agencies subject to the

---

[1] Prior counsel for the Defendants, Michael Duane, filed the answer and the response to the motion for judgment prior to Ms. Kehne's substitution as counsel.

Public Records Act. In this case, Plaintiff Duffort requested records from both defendants relating to bullying, hazing and harassment complaints in the Vermont public schools. The Agency collects data from public schools reflecting such complaints and the responses thereto. To do so, it uses software called Combined Incident Reporting Software (CIRS), through which the schools electronically submit the data. The schools are required to report all hazing, harassment and bullying complaints. The Board is required by law to report annually on "the condition of education statewide and on a school by school basis." 16 V.S.A. § 164(17). The reports are to include, inter alia, the "number and types of complaints of harassment, hazing or bullying . . . and responses to the complaints…" Id. The report is to be "easily understandable by the general public and . . enable[] each school to determine its strengths and weaknesses." Id.[2]

Duffort's initial request was for the following; "[T]he school by school reports referenced in 16 V.S.A. § 164(17), for the following school years: 2012-13, 2013-14, and 2014-15." Complaint, Ex. D. In response, Defendants said that their data is not maintained at the state level on a school-by-school basis. Id. In response to the motion for judgment on the pleadings, Defendants assert that "the information [Duffort] was seeking would require the creation of a public record that the Defendants were unwilling to do[.]" Mem. In Opp. at unnumbered page 3. Defendants take the position that "the records being sought do not exist" and that they are not required to create a document that does not exist. Id. At oral argument, counsel for Defendants agreed to provide Plaintiff with the "text data streams" that are generated by the software, along with a code to interpret them. However, Plaintiff did not agree that those records resolved the case.

---

[2] Although they appear to have separate responsibilities, for purposes of this motion the parties have for all practical purposes treated the Agency and the Board as one entity.

2

For purposes of the discussion below, the court notes that other than saying they would not create a new record, no statutory exemptions to disclosure have been asserted by Defendants.

Discussion

Judgment on the pleadings under Rule 12(c) is appropriate "when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided." 5C C. Wright, A. Miller, Federal Practice & Procedure Civil § 1367 (3d ed.). Many of the allegations of the complaint are supported by documents attached as exhibits. In their answer, Defendants respond to many of the allegations by stating: "Denied insofar as Exhibit [ ] speaks for itself." Plaintiff argues that this is an improper response to a complaint, citing other jurisdictions for this proposition. The court would not go so far as to say that such a response is improper, but it is annoying because it shifts the work to the court to determine whether the complaint accurately describes the documents. If the court agrees that the exhibit in question says what Plaintiff describes it as saying, this is the equivalent of an admission. Having reviewed the exhibits, the court finds the Plaintiff's allegations to be accurate. Thus, most of the allegations of the complaint are admitted.

In particular, it is admitted that (1) the CIRS software system "is capable of searching, organizing, and producing a report from data contained in the Defendant [Agency's] databases"; (2) that although the Agency has the number of complaints made statewide, it does not have current records on a school-by-school or district-by-district basis; (3) the Agency could "recreate" a district level report but declined to do so. *See* Complaint ¶¶ 26, 48, 57-60, 61, 64, 68, 69. In addition, the records show that although the Agency had deleted the actual submissions from each school or district, it "could extract and compile information responsive to Ms. Duffort's request from [its] electronic databases," but declined to do so because this "would constitute the creation

3

of new records." Complaint ¶ ¶ 95-100, 125, 130, 140. The Agency suggested that requests be made separately to each school in Vermont. Complaint ¶ 101.

The issue before the court is whether, on these facts, the Defendants are obliged to produce the requested information. The Public Records Act says when records are maintained in electronic form, they may be made available for copying in electronic or paper format, and an agency "may, but is not required to, . . . create a public record[.]" 1 V.S.A. 316(i). A "public record" is defined as "any written or recorded information, regardless of physical form or characteristics, which is produced or acquired in the course of public agency business." Id. § 317(b). If this case involves creation of a new record, production is not mandated by law. The question comes down to this: when is running an electronic query merely producing an existing record in a usable format, and when is it creating a new record?

As Duffort points out, if the electronic query is akin to a manual search of file folders for the requested information, the fact that the search is done electronically rather than manually cannot change the result. Thus, if the information exists in agency files, albeit electronic ones, and merely needs to be "pulled out" of those files by a query as it would be by a human hand from paper files, the information is not protected from disclosure. Such a query is not the creation of a new record, it is the collection of existing records. "Electronic database searches are . . . not regarded as involving the creation of new records." People for the Am. Way Found. v. U.S. Dep't of Justice, 451 F.Supp.2d 6, 14 (D.D.C. 2006); *see also* Nat'l Sec. Counselors v. C.I.A., 898 F. Supp. 2d 233, 270 (D.D.C. 2012) ("[S]orting a pre-existing database of information to make information intelligible does not involve the creation of a new record. . ."). As another decision points out:

> [C]omputer-stored records, whether stored in the central processing
> unit, on magnetic tape or in some other form, are still "records" for

> purposes of the FOIA. Although accessing information from computers may involve a somewhat different process than locating and retrieving manually-stored records, these differences may not be used to circumvent the full disclosure policies of the FOIA. The type of storage system in which the agency has chosen to maintain its records cannot diminish the duties imposed by the FOIA.

Yeager v. Drug Enforcement Admin., 678 F.2d 315, 321 (D.C. Cir. 1982).[3]

However, "the distinction between searching and either performing research or creating records remains somewhat muddled." National Sec. Counselors at 270. The line is essentially between data the agency has collected for its own use, and data that a requester seeks that is not something the agency uses but can be created from that data. "For example, if a FOIA request sought 'an inventory of all non-electronic records created in 1962 regarding the Cuban Missile Crisis,' an agency need not create an inventory if one did not already exist," but it would have to produce the actual records regarding the missile crisis if they were requested. Id. at 271. "[A] FOIA request for a listing or index of a database's contents that does not seek the contents of the database, but instead essentially seeks information about those contents, is a request that requires the creation of a new record, insofar as the agency has not previously created and retained such a listing or index." Id.; *see also*, Landmark Legal Found. v. Dep't of Justice, 211 F. Supp. 3d 311, 318 (D.D.C. 2016) ("Plaintiff may want a list of DOJ employees who use personal email for Department business, but FOIA only entitles it to such a list if the Department already has one—it does not require the Department to create one."); Am. Civil Liberties Union v. Arizona Dep't of Child Safety, 377 P. 3d 339, 346 (Ariz. Ct. App. 2016) ("[A]n agency has no legal duty to create a new record that compiles or aggregates information about preexisting records.").

---

[3] Surprisingly, prior counsel for Defendants did not address these cases at all in his extremely brief opposition to Duffort's motion.

5

An example might be the difference between asking "how many reports were made about hazing in 2012-15?" and asking for "copies of all hazing reports that were made in 2012-15." If the former exists because the Defendants have already collated the figures, the document listing the totals must be produced. If not, the agency is not required to sit down and count the number of complaints. Id. at 150 ("[R]equests for information about information" need not be answered.). However, if the request is for copies of all complaints, and the agency has collected them, it must produce them.

Here, the initial record request was for the following: "[T]he school by school reports referenced in 16 V.S.A. § 164(17), for the following school years: 2012-13, 2013-14, and 2014-15." Complaint, Ex. D. After some back and forth about what was available, Duffort asked whether she could at least get district by district data. She asked for "district name, number of incidents in a given year, and number of verified incidents in that same year." Complaint, Ex. F. As noted above, the Board is required by law to report annually on the "number and types of complaints of harassment, hazing or bullying . . . and responses to the complaints…" 16 V.S.A. § 164(17). The statute requires that the reporting be done both on a statewide and a "school by school basis." Id. It is to allow "each school to determine its strengths and weaknesses." Id. Thus, the Agency at some point obtained the school by school data from the schools and is supposed to issue a yearly report providing that information to the public and the schools. Apparently those reports have not actually been issued as required, but the data requested is something the Agency is required by law to collect. Thus,

> [T]the underlying raw data . . . must have already been created and in existence. That a list was never printed out in hardcopy format or never exported and saved as a separate electronic file apart from the raw database does not imply that such records had not been "created" at the time of the FOIA request.

6

Am. Small Bus. League v. U.S. Small Bus. Admin., No. C 08-00829 MHP, 2008 WL 3977780, at *4 (N.D. Cal. Aug. 26, 2008). The Defendants concede that they have the electronic data and can query it for the information Duffort requests. Because the Defendants here have "conceded that [they] possess in [their] databases the discrete pieces of information which [Duffort] seeks, extracting and compiling that data does not amount to the creation of a new record." Schladetsch v. U.S. Dep't of H.U.D., No. 99-0175, 2000 WL 33372125, at *3 (D.D.C. Apr. 4, 2000). Defendants "should not be able to input information from public records into a database and, in turn, shed [their] duty to disclose that same information under [the Public Records Act.]" Hites v. Waubonsee Cmty. Coll., 56 N.E.3d 1049, 1064 (Ill. App. Ct.), as modified on denial of reh'g (July 13, 2016).

Order

Duffort's motion for partial judgment on the pleadings is granted. A status conference will be set to discuss how to proceed on the balance of the case. If counsel submit a proposed scheduling order, the conference may be unnecessary.

Electronically signed on May 22, 2017 at 9:59 AM pursuant to V.R.E.F. 7(d).

_____
Helen M. Toor
Superior Court Judge

7