# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 4, 2019        Decided August 11, 2020

No. 18-5047

NATIONAL SECURITY COUNSELORS,
APPELLANT

v.

CENTRAL INTELLIGENCE AGENCY,
APPELLEE

Consolidated with 18-5048

Appeals from the United States District Court
for the District of Columbia
(No. 1:11-cv-00444)
(No.1:11-cv-00445)

*Kelly B. McClanahan* argued the cause and filed the briefs for appellant.

*Brad Hinshelwood*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief was *Sharon Swingle*, Attorney.

Before: SRINIVASAN, *Chief Judge,* ROGERS, *Circuit Judge*, and SILBERMAN, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: National Security Counselors (NSC) is a Virginia-based non-profit organization that disseminates national security materials to the public. NSC frequently seeks to obtain records from intelligence and defense agencies through the Freedom of Information Act.

NSC filed three lawsuits in federal district court on the same day in 2011. The lawsuits together raised forty-five claims against six federal agencies arising out of numerous FOIA requests initiated by NSC. The district court, in a series of decisions, eventually ruled in favor of the government on all of NSC's claims. *See Nat'l Sec. Counselors v. CIA* (*NSC I*), 898 F. Supp. 2d 233, 290–91 (D.D.C. 2012); *Nat'l Sec. Counselors v. CIA* (*NSC II*), 960 F. Supp. 2d 101, 208–10 (D.D.C. 2013); *Nat'l Sec. Counselors v. CIA* (*NSC III*), 206 F. Supp. 3d 241, 288–90 (D.D.C. 2016).

NSC now appeals, raising a number of challenges to the district court's decisions. In this opinion, we individually address (and reject) three of NSC's claims: two claims concerning distinct FOIA requests made to the Central Intelligence Agency and a third claim concerning the Department of Justice's assertion of attorney-client privilege in response to a FOIA request. While we do not separately discuss NSC's remaining claims, we find that none has merit and thus affirm the district court in all respects.

I.

FOIA allows agencies to assess varying fees against requesters depending on the purpose for which the information is sought, the identity of the requester, or both. *See* 5 U.S.C. § 552(a)(4)(A). In August 2010, NSC submitted FOIA

requests to the CIA for a listing of all FOIA requesters from fiscal years 2008 to 2010 organized under each of four fee categories contemplated by FOIA: "news media," "educational or scientific," "commercial," or "all other." NSC FOIA Requests to CIA (Aug. 8, 2010), 1 J.A. 103–15; *see* 5 U.S.C. § 552(a)(4)(A)(ii)(I)–(III).

The CIA declined to process the requests, explaining, among other things, that FOIA does not require an agency to create records not otherwise in existence. NSC then brought an action under FOIA in the district court, challenging the agency's refusal to process the requests. The district court granted summary judgment in favor of the CIA. *See NSC II*, 960 F. Supp. 2d at 161. We review the district court's grant of summary judgment de novo, *see Nat'l Sec. Counselors v. DOJ*, 848 F.3d 467, 470 (D.C. Cir. 2017), and agree with the court's disposition.

FOIA provides for "disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 162 (1975). But "FOIA imposes no duty on the agency to create records." *Forsham v. Harris*, 445 U.S. 169, 186 (1980). FOIA, that is, only requires disclosure of documents that already exist, not the creation of new records not otherwise in the agency's possession. *See Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982); H.R. Rep. No. 104–795, at 22 (1996).

Here, NSC's request for the CIA to produce listings according to four fee categories of all FOIA requesters over a two-year period would require the agency to create new records, not to disclose existing ones. The CIA's Information Review Officer, whose responsibilities include final review of documents that are the subject of FOIA requests, submitted a

declaration in the district court that sets out the relevant capabilities of the agency's FOIA records system. Declaration of Martha Lutz ¶ 11 (Dec. 13, 2011) (Lutz Decl.), 1 J.A. 196. As she explained, "[f]ee category is not a mandatory field in CIA's current electronic FOIA records system; therefore, this information is often not included in a FOIA request record." *Id.* To produce listings of FOIA requesters by fee category per NSC's request, then, "the CIA's FOIA analysts would be required to individually review each FOIA request submitted from 2008 to 2010 and manually sort thousands of requests based on fee category." *Id.* That process would quintessentially entail the creation of new records, not the disclosure of preexisting ones.

According to NSC, "sorting a database by field is not creating records, and releasing the information which resulted from that sorting action is *also* not creating records." NSC Br. 16. We have no occasion here, however, to consider whether sorting a database by field would involve the creation of new records. As the CIA's declaration establishes, the agency's FOIA database does not contain the relevant field (i.e. fee category) as mandatory information in the first place. Lutz Decl. ¶ 11, 1 J.A. 196.

NSC suggests more broadly that "there are no 'records' to speak of in an electronic database in which information is entered into fields." NSC Br. 16. FOIA makes clear, though, that a "record" within the meaning of the statute includes information "that would be an agency record . . . when maintained by an agency in any format, including an electronic format." 5 U.S.C. § 552(f)(2)(A); *see Yeager*, 678 F.2d at 321. But regardless of whether a given record exists in an electronic or paper format (or both), the statute only calls for the disclosure of existing records, not the generation of new ones. And whatever questions may arise in future cases about when

disclosing the results of an electronic search of records entails creation of a record, here, responding to NSC's request would require manual review and sorting of numerous electronic records and the ensuing compilation of lists that do not otherwise exist. That exercise self-evidently amounts to records creation, which FOIA does not require.

II.

We next consider another FOIA request NSC made to the CIA, this one for "all Central Intelligence Agency ('CIA') records pertaining to the IBM supercomputer named 'Watson.'" CIA Request Correspondence (Feb. 16, 2011), 1 J.A. 275. NSC added "that agencies have a duty to construe the subject material of FOIA requests *liberally* to ensure responsive records are not overlooked." *Id.* The CIA declined to process the request "in its current form because it would require the Agency to perform an unreasonably burdensome search." CIA Request Correspondence (Mar. 2, 2011), 1 J.A. 280. The CIA invited NSC "to refine the scope of [its] request (such as contracts, if they exist, which would explain records pertaining to 'Watson') to enable [the agency] to conduct a reasonable search for responsive information." *Id.*

NSC did not narrow the scope of its request, but instead filed a lawsuit challenging the CIA's response. The district court granted summary judgment to the CIA. *NSC II*, 960 F. Supp. 2d at 163. We again agree with the district court's disposition.

FOIA imposes obligations on agencies to disclose records for requests that "reasonably describe[] such records." 5 U.S.C. § 552(a)(3)(A). We have explained that agencies "need not honor a request that requires 'an unreasonably burdensome search.'" *Am. Fed'n of Gov't Emps. Local 2782 v. U.S. Dep't*

*of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (citing *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978)). We have also established that agencies should read FOIA requests "as drafted, not as either agency officials or [the requester] might wish it was drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984). The upshot is that, when the request as drafted would require an agency to undertake an unreasonably burdensome search, the agency can decline to process the request.

That is what happened here. As the CIA's Information Review Officer explained in her declaration, "it is difficult to determine where responsive information would likely be located within the Agency because the request is so general." Lutz. Decl. ¶ 31, 1 J.A. 204. "CIA's records," she advised, "are decentralized and compartmented. Each directorate . . . must determine which components and/or records systems within the directorate might reasonably be expected to possess records responsive to a particular request." *Id.* at ¶ 30. As a result, "the CIA would be required to search every office for any documents containing the word 'Watson,'" which would amount to a "massive undertaking." *Id.* at ¶ 31, 1 J.A. 205.

NSC does not dispute that a search for all documents anywhere in the CIA related to "Watson" would be unduly burdensome. NSC instead submits that the CIA gave the request an "overbroad reading," in that the request should have been understood to encompass only "records about how the development of Watson impacted the Intelligence Community, specifically with respect to the application of comparable artificial intelligence systems to intelligence analysis." NSC Br. 27. The request, though, does not say that. Instead, it is framed broadly to seek "all [CIA] records pertaining to the IBM supercomputer 'Watson,'" with an added emphasis "to construe" it "*liberally*." CIA Request Correspondence, 1 J.A.

275.  To be sure, NSC, when asking for a public-interest fee waiver in its letter transmitting the request, said that responsive records would "serve as a case study for the CIA's involvement in artificial intelligence research."  *Id.* at 277.  But the request itself was not so confined, and NSC did not refine its request after the CIA invited it to do so.

The agency interpreted NSC's request as drafted, as our decisions direct.  *Miller*, 730 F.2d at 777.  And the agency and the district court correctly concluded that, as drafted, the request called for an unreasonably burdensome search.

## III.

We next consider a FOIA request submitted by NSC to the Office of Legal Counsel (OLC) in the Department of Justice. The request sought OLC opinions pertaining to various statutes including FOIA itself, the Privacy Act, and the Federal Records Act.  *See NSC II*, 960 F. Supp. 2d at 119.  OLC withheld a number of its responsive opinions under FOIA Exemption 5 based on the attorney-client privilege.  *See id.* at 119–20, 196. For two of the opinions, the district court determined that OLC, in other official settings, had referenced the opinions' legal conclusions or conveyed a summary of the opinions.  *Id.* at 197–99.  The court thus ordered OLC to disclose those portions of the two opinions that corresponded with the disclosures in the other settings, *id*. at 199–200, which OLC did.

The district court, in ordering disclosure of those parts of the two opinions, relied on decisions holding that, when information has been officially acknowledged and voluntarily disclosed in a public domain, "a FOIA plaintiff may compel disclosure of that information even over an agency's otherwise valid exemption claim."  *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 620 (D.C. Cir. 2011) (citing *Wolf v. CIA*, 473 F.3d 370,

378 (D.C. Cir. 2007)); *see NSC II*, 960 F. Supp. 2d at 198. The district court subsequently rejected NSC's contention that it was entitled to the full contents of the two OLC opinions, not just the portions corresponding with the official acknowledgments. *NSC III*, 206 F. Supp. 3d at 288. NSC now renews its argument that OLC should have been compelled to release the full contents of the two opinions. We disagree.

NSC draws a distinction between two potential grounds for compelling disclosure of the full OLC opinions notwithstanding OLC's assertion of the attorney-client privilege: (i) the above-referenced "official acknowledgment" doctrine, under which an agency cannot withhold information pursuant to any FOIA exemption when there has previously been a voluntary, official acknowledgment of the information to the public, *see, e.g.*, *Wolf*, 473 F.3d at 378; and (ii) waiver of the attorney-client privilege itself as to the two opinions. NSC does not dispute that, with regard to the first of those potential grounds (which it describes as "significantly narrower"), it was entitled to disclosure only of the parts of the OLC opinions that the district court ordered be disclosed, not the full opinions. *See* NSC Br. 52–53. NSC's argument instead is that it was entitled to the full OLC opinions because there had been a waiver of the attorney-client privilege. *See id.* According to NSC, waiver of the attorney-client privilege generally effects a waiver as to all material relating to the same subject matter, thus requiring disclosure of the full OLC opinions. *Id.*

We conclude, though, that there was no waiver of the attorney-client privilege with regard to the two OLC opinions. In the case of one of the opinions, the waiver ostensibly occurred when OLC cited a legal conclusion contained in it in the course of another, publicly disclosed opinion. *See NSC II*, 960 F. Supp. 2d at 198. In the case of the second OLC opinion,

the waiver ostensibly occurred when an OLC attorney provided a "summary of a summary" of the opinion in an interagency committee meeting. *See id.* at 197. Neither of those events effected a waiver of the privilege with regard to the two referenced opinions.

We need not assess whether the nature of the references to the two opinions sufficed to constitute a waiver of the attorney-client privilege. That is because, in any event, the references were made by the attorney (OLC), not the client (the agency to which OLC gave advice). Disclosure "by the holder" of the privilege can give rise to a waiver, *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1369 (D.C. Cir. 1984), and as NSC recognizes, it "is axiomatic that the attorney-client privilege is held by the *client*," NSC Br. 53 n.7. As a result, an "attorney is given the power to claim the privilege on behalf of the client but his betrayal of the client's secret is not treated as a waiver of the privilege." 26A Charles Alan Wright et al., Federal Practice & Procedure § 5724 (1st ed. 2020); *see also Hanson v. USAID*, 372 F.3d 286, 294 (4th Cir. 2004) ("an attorney may not unilaterally waive the privilege that his client enjoys"); *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984) (the privilege applies if "not waived by the client"). OLC's own disclosures concerning the two opinions at issue, then, did not effect a waiver of the attorney-client privilege, at least absent any indication (absent here) that OLC was acting on behalf of the client when making the disclosures. *See Hanson*, 372 F.3d at 294.

It is true that the district court, in the course of explaining that there had been an official acknowledgment of the two opinions so as to implicate the official-acknowledgment doctrine, went on to say that there had also been a waiver of the attorney-client privilege. *See NSC II*, 960 F. Supp. 2d at 198. For the reasons explained, however, we conclude that there was

no such waiver in the circumstances. We therefore have no occasion to address whether, if there had been a waiver of the privilege in connection with the two opinions, disclosure of the full opinions would have been necessary as a matter of course. *See In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997). Rather, because there was no waiver to begin with, we reject NSC's argument that it was entitled to disclosure of the full OLC opinions on a privilege-waiver theory.

\*   \*   \*   \*   \*

NSC advances an array of additional arguments concerning various aspects of district court's decisions under review. We have given those arguments careful consideration and conclude that the district court did not err in its dispositions. For the foregoing reasons, we affirm the district court's judgments.

*It is so ordered.*