# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 12, 2019  Decided November 1, 2019

No. 18-5316

INSTITUTE FOR JUSTICE,
APPELLANT

v.

INTERNAL REVENUE SERVICE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-02406)

———

*Andrew D. Prins* argued the cause for appellant. With him on the briefs was *Gregory in den Berken*.

*Douglas C. Rennie*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General, *Travis A. Greaves*, Deputy Assistant Attorney General, *Gilbert S. Rothenberg*, and *Michael J. Haungs*, Attorneys.

Before: PILLARD and RAO, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: The non-profit, public interest law firm Institute for Justice seeks information kept by the Internal Revenue Service about asset forfeitures. In its request, the Institute followed a lead supplied by the IRS. The latter's own manual repeatedly refers to the Asset Forfeiture Tracking and Retrieval System ("AFTRAK") as the "database" in which the agency compiles information about asset forfeitures. See Internal Revenue Manual, §§ 9.7.5.2, 9.7.5.4.1(1). Accordingly, the Institute submitted a Freedom of Information Act ("FOIA") request for "all records contained in" the AFTRAK database.

The IRS's legal response, both in the district court and here, is that the Institute's FOIA request fails from the start because AFTRAK "is not a 'database'" and therefore its "'contents' do not qualify as 'records' under the FOIA." Joint Meet & Confer Statement 2, ECF No. 10. The modifier "legal" is critical in the sentence above, as the factual declaration the IRS submitted conspicuously includes no assertion that AFTRAK is not a database. More affirmatively, the IRS says that AFTRAK is (legally and factually) "a web-based application that aggregates information from various other sources within the [IRS] into a single user interface." Def.'s Mem. Supp. Summ. J. 3, ECF No. 14-1. According to the IRS, this distinction renders the Institute's request not just imprecise, but unintelligible: "[b]ecause AFTRAK only generates reports, there was [] no traditional search to perform in AFTRAK." Def.'s Reply Br. Supp. Mot. Summ. J. 7, ECF No. 26.

Nonetheless, after the Institute filed suit, the IRS created what it describes as the "most comprehensive standard report from the AFTRAK system, the Open/Closed Asset Report," Joint Status Report 5, ECF No. 12, saved the Report in PDF format, heavily redacted it, and provided it to the Institute. Pl.'s Br. Supp. Mot. Discovery 9–10, ECF No. 15-1. By the IRS's telling, creating the Report was "arguably" an act of administrative grace; FOIA imposes no duty on agencies to create new records in response to FOIA requests, but here the agency created the Open/Closed Report. Appellee's Br. 44.

Unhappy with that result, the Institute filed a cross-motion for summary judgment, but the district court awarded summary judgment in large part in favor of the IRS. The court reasoned that "there is no need to resolve the technical question of whether AFTRAK is or is not a database," because regardless of that determination, "[t]he IRS generated a comprehensive report that revealed every possible data point on seized assets in the AFTRAK system during the relevant timeframe." *Institute for Justice v. IRS*, 340 F. Supp. 3d 34, 41 (D.D.C. 2018). The court also granted summary judgment on the IRS's application of FOIA Exemptions 7(A) and 7(C), 5 U.S.C. § 552(b)(7)(A), (C), and deemed the Institute to have forfeited its objection to the IRS's redaction of Asset Description column entries under Exemption 7(F), *id.* § 552(b)(7)(F). *Institute for Justice*, 340 F. Supp. 3d at 41–45.

We reverse the district court and remand the case for further proceedings. First, whether the Open/Closed Report covers all records "contained in" AFTRAK is itself a material, genuinely disputed question of fact, and the answer in turn depends on other disputed and material facts. Second, whether AFTRAK is correctly classified as a database, a matter on which the IRS's Manual and other official documents

contradict its legal denial here, appears to be an intermediate fact with potential consequences for resolving the parties' claims. The disputes on these matters preclude summary judgment.

* * *

We review *de novo* the district court's grant of summary judgment, *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C. Cir. 1995), and "must draw 'all justifiable inferences' in favor of the non-movant," *Aguiar v. Drug Enforcement Administration*, 865 F.3d 730, 735 (D.C. Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

An agency "fulfills its obligations under FOIA 'if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents.'" *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)). In the context of a request for a database, "FOIA requires agencies to disclose all non-exempt data points," *National Security Counselors v. CIA*, 898 F. Supp. 2d 233, 272 (D.D.C. 2012), subject, as always, to limits aimed at protecting agencies from undue burdens.

Viewing the case in this light, we are not convinced beyond a material doubt that the Open/Closed Report contains all AFTRAK records or that its delivery to the Institute could serve as a substitute for the search required by FOIA.

The key passage from the IRS's sole declaration on the matter explains that the Open/Closed Report is "the most

utilized and complete standard report available from the AFTRAK system" and "contains comprehensive data about every asset seized by [the Criminal Investigation section of the IRS] within a specified time period." Dean Martin Decl. ¶ 10 (July 10, 2017), ECF No. 14-3. But this terse statement and the Institute's evidence to the contrary leave many unanswered questions.

First, does "comprehensive data about every asset seized" mean all the records "contained in" AFTRAK, which the Institute requested? "Comprehensive" can mean "including or dealing with all *or nearly all* elements or aspects of something," New Oxford American Dictionary (2d ed. 2005) (emphasis added), or being "of large content or scope," *id.* In short, "comprehensive" does not always mean "all." Plus, this comprehensiveness pertains to "every asset seized," but what about data not specific to individual assets or their seizure, such as statistical and reporting data? Cf. Martin Decl. ¶ 7 ("AFTRAK is also used for monitoring assets in inventory and for law enforcement statistical and reporting purposes exclusively by CI personnel.").

Second, does AFTRAK include data about assets seized by IRS sections other than Criminal Investigation? If so, why should such data not be disclosed (unless for some reason it doesn't constitute a "record")?

Third, even if the Open/Closed Report is "the most utilized and complete standard report," that seems no reason for the IRS to withhold data absent from the Open/Closed Report but included in a non-standard report or other record.

Fourth, and perhaps most devastating to the IRS's position: In 2014 the IRS furnished the Institute a limited dataset in

response to a FOIA request; that dataset included three columns of information—"State Seized," "Forfeiture Actual Amount," and "Primary Statute Violated"—that aren't found in the IRS's "comprehensive" Open/Closed Report. See Appellant's Br. 19–20 & n.10 (citing Joint Appendix ("J.A.") 112–89, 647–57).

Fifth and finally, the IRS's counsel confirmed in an email to the Institute's counsel, in reference to a "sample" of the Open/Closed Report, that either the Report itself, or perhaps only its sample—that remains ambiguous—does not include all "fields" of data from AFTRAK. Email from Joycelyn Peyton, Trial Attorney, U.S. Dep't of Justice, to Andrew Prins, Partner, Latham & Watkins LLP (Mar. 21, 2017, 13:37 EDT), ECF No. 23-2; Andrew Prins Decl. ¶ 2 (Apr. 20, 2018), ECF No. 23-1. Were the missing fields simply rows of the sample to be added before delivery of the full report, or whole columns of information to be left out even from the final production?

As to the significance of AFTRAK's constituting a "database," nearly forty years ago we treated databases as containing the modern equivalent of old-fashioned records, saying, "Although accessing information from computers may involve a somewhat different process than locating and retrieving manually-stored records, these differences may not be used to circumvent the full disclosure policies of the FOIA." *Yeager v. Drug Enforcement Administration*, 678 F.2d 315, 321 (D.C. Cir. 1982). See also *Elliott v. Dep't of Agriculture*, 596 F.3d 842, 852 (D.C. Cir. 2010) (using the terms "filing cabinet" and "electronic database" interchangeably when addressing the adequacy of a search); *Multi Ag Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1226 (D.C. Cir. 2008) (applying standard FOIA rules to "a massive database" in agency hands); *Petroleum Information Corp. v. Dep't of Interior*, 976 F.2d 1429, 1431–32 (D.C. Cir. 1992) (applying standard rules to

"data elements—i.e., categories of information" in "records from a computer data bank"). The essence of our approach—treating electronic records the same as analog records—was later codified by the Electronic Freedom of Information Act Amendments of 1996, which newly defined a "record" as "any information that would be an agency record . . . when maintained by an agency *in any format, including an electronic format*," Pub. L. No. 104-231, § 3, 110 Stat. 3048, 3049 (1996) (codified as amended at 5 U.S.C. § 552(f)(2)(A) (emphasis added)). See also H.R. Rep. 104-795, at 22 (1996), 1996 U.S.C.C.A.N. 3448, 3465 (analogizing "[c]omputer records found in a database" to records in a "file cabinet").

We follow the parties' and the district court's lead in using "database"—a term that has no independent legal significance under FOIA—to mean a system that stores or contains records subject to FOIA. Absent further evidence to the contrary, it seems safe to say that if AFTRAK is a database, the Institute is entitled to more than has been delivered, very possibly much more. And even if it should prove that AFTRAK isn't a database, we have no showing at all why AFTRAK's (as yet undisclosed) non-database characteristics in any way imply that a search for records "contained in" it would not yield material more closely approximating the IRS's expansive descriptions of AFTRAK in the IRS Manual and other publications than does the Open/Closed Report.

In sum, the IRS's declaration, on its own terms, does not contain the "reasonable specificity of detail" necessary to sustain summary judgement, *Aguiar*, 865 F.3d at 735, and worse, its claims have been "called into question by contradictory evidence in the record," *id*. These discrepancies require explanation. Given the existing record, the district court erred in concluding that the IRS's production of the

Open/Closed Report satisfied the IRS's ordinary obligation to search AFTRAK for "all records."

\* \* \*

On remand, the district court will have to ascertain the nature of the AFTRAK system—i.e., whether and to what extent AFTRAK itself contains records and/or provides access to records stored elsewhere. To the extent that AFTRAK provides access to records stored elsewhere, the district will need to "ascertain the scope of the [Institute's] request," *Nation Magazine*, 71 F.3d at 889, specifically, whether it requests such records, and then determine whether the IRS's search was adequate in light of that scope.

As to scope, the Institute argued before the district court that the IRS should have construed its request for all records "contained in" AFTRAK as also including a request for records "accessible by" AFTRAK, in the event that technical facts about how AFTRAK works, unknown to the Institute, would make a request for records "accessible by" AFTRAK better targeted and more encompassing than a request for records "contained in" it. Pl.'s Br. Supp. Mot for Discovery 10, 16, ECF No. 15-1. We leave it to the district court to decide in the first instance the proper scope of the Institute's request. We do not require technical precision in FOIA requests, and a request certainly should not fail where the agency knew or should have known what the requester was seeking all along. For example, a FOIA request for emails would not fail because the request was for emails "in" an Outlook inbox rather than "accessible through" Outlook. Nor do we require a requester to know anything about where or how the agency stores those emails. Instead, the statutory standard for a FOIA request is that it

"reasonably describes" the records sought. 5 U.S.C. § 552(a)(3)(A).

Congress added the "reasonably describes" standard for a FOIA request in 1974, replacing the requirement that a request name "identifiable records." See Act of Nov. 21, 1974, Pub. L. No. 93-502, § 1(b)(1), 88 Stat. 1561, 1561. According to the Senate Judiciary Committee Report accompanying the amendment, the change "makes explicit the liberal standard for identification that Congress intended." S. Rep. No. 93-854, at 10 (1974). Accordingly, our case law has often repeated that an agency "has a duty to construe a FOIA request liberally." *Nation Magazine*, 71 F.3d at 890 (citing *Truitt v. Dep't of State*, 897 F.2d 540, 544–45 (D.C. Cir. 1990), and *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836–37 (D.C. Cir. 1979)). Here, the IRS's narrow interpretation would be lawful only if the agency were truly not "able to determine 'precisely what records [were] being requested.'" *Yeager*, 678 F.2d at 326 (quoting S. Rep. No. 93-854, at 10).

The IRS's argument to the contrary is unpersuasive. The agency mistakenly cites *Kowalczyk v. U.S. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996), for the proposition that it may narrowly construe the scope of the Institute's request. See Appellee's Br. 30. But in *Kowalczyk* the request never mentioned, and contained no clues suggesting, a location that the requester later claimed was a likely site for documents he sought (the FBI's New York office). 73 F.3d at 389. The court rejected this attempted demand on FBI's intuition or second sight. Once again it said that a "request reasonably describes records if 'the agency is able to determine precisely what records are being requested,'" *id*. at 388 (quoting *Yeager*, 678 F.2d at 326), but an agency need not "speculate about potential leads" to responsive documents, *id*. at 389. In the same breath,

the court clarified that "[t]his is not to say that the agency may ignore what it cannot help but know." *Id.* See also *Valencia-Lucena*, 180 F.3d at 327 ("It is well-settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden.").

The IRS hasn't revealed what limits it may believe inhere in the words "contained in." A request for records contained in the "Asset Forfeiture *Tracking and Retrieval* System" certainly sounds at first blush as if it seeks records that can be tracked and retrieved through that system. Is the IRS arguing that the words exclude a record that is retained elsewhere by the agency and which AFTRAK accesses and displays? If so, then in what sense would such a document not be "contained in" AFTRAK? Is such a link a "lead"?

The second inquiry for the district court on remand is whether the IRS's search was adequate, considering the scope of the request. The IRS has a tidy two-step argument: the scope of the FOIA request includes only records "contained in" AFTRAK, and the only "records" contained in AFTRAK are the reports it generates, because it is not a database. Appellee's Br. 35. See also Def.'s Reply Br. Supp. Mot. Summ. J. 6–7, ECF No. 26. We have already expressed our doubts as to the plausibility of the IRS's scoping, and now review the IRS's legal claim that AFTRAK is not a database.

The IRS's declaration states that AFTRAK is a "web-based application," but does *not* state that AFTRAK is not *also* a database—as IRS's counsel asserts. Compare Martin Decl. ¶ 6 ("AFTRAK is a web-based application system specifically designed to track assets seized for forfeiture, evidence, and abandonment.") with Def.'s Mem. Supp. Mot. Summ. J. 3, ECF

No. 14-1 ("[T]hough [the Institute] resolutely asserts that AFTRAK is a 'database' . . . it is not."). Nor does the IRS give the court reason to infer that there's any inherent conflict in classifying the AFTRAK "system" as both a "web-based application" and a database. Given that the IRS's legal argument turns on AFTRAK's not being a database, the failure of the IRS's sole declaration even to assert (much less explain or justify) mutual exclusivity between the two is bewildering.

By contrast, the Institute's claim to the contrary, that AFTRAK is "almost certainly" a database, finds considerable support in the record. The Institute presented three separate documents: the IRS Manual, IRS "Information Quality" guidelines, and a report by the Treasury Department's Inspector General for Tax Administration, which all independently refer to AFTRAK as a "database." The IRS's attempt to belittle these sources as merely "documents [the Institute] appears to have found on the internet," Appellee's Br. 25, does nothing to undercut their force as official agency descriptions of AFTRAK. The Institute also entered into the record a declaration submitted by the IRS in other federal litigation which describes AFTRAK as "an asset inventory system" in which the declarant, an "Asset Forfeiture Coordinator," is said to "enter" information about seized assets. Teri Schultz Decl. ¶ 4, *Stott v. Internal Revenue Service*, No. 14-cv-176 (W.D. Wis. Sept. 10, 2014), Dkt. 11. If a person can "enter" information into AFTRAK, why can't the information so entered be "reasonably described" as a record "contained in" it?

We thus think it clear that viewing the evidence in the light most favorable to the Institute, the material fact of AFTRAK's status as a database remains in dispute, unless other facts and analysis render it possible to conclude that material by then

supplied by the IRS satisfies the Institute's request. Of course we don't foreclose either the possibility that despite AFTRAK's classification as a database some of the records the Institute seeks are somehow beyond its request, or the possibility that despite AFTRAK's classification as something other than a database the Institute is fully entitled to those records.

We note that the Institute also appealed the district court's denial of additional discovery under Rule 56(d). "Because we conclude that appellant carried [its] burden of opposing the motion for summary judgment" on the search's adequacy, however, "we do not reach the issue whether the denial of additional discovery was appropriate" under Rule 56(d). *Greenberg v. FDA*, 803 F.2d 1213, 1217 n.4 (D.C. Cir. 1986). Instead, we leave open to the district court on remand to consider the extent to which discovery may be appropriate in light of our opinion.

\* \* \*

We also vacate the district court's grant of summary judgment insofar as it sustains the IRS's application of Exemptions 7(A) to entire rows of the Open/Closed Report without showing that non-exempt information cannot be segregated. On *de novo* review, we conclude that the IRS failed to tailor the categories of information withheld to what Exemption 7(A) protects: law enforcement records that "could reasonably be expected to interfere with enforcement proceedings." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091, 1096 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)(A)). In so doing, the agency does not appear to have accounted for its "obligat[ion] to disclose '[a]ny reasonably segregable portion of a record'

after removing the exempt material," *Bartko v. U.S. Dep't of Justice*, 898 F.3d 51, 62 (D.C. Cir. 2018) (quoting 5 U.S.C. § 552(b)), pursuant to this exemption, or to "note the 'amount of information deleted,'" *id*.

The invocation of Exemption 7(A) to redact *all rows* relating to open investigations using the justification that "[d]isclosure of any information concerning an open criminal investigation could reasonably be expected to compromise or interfere with ongoing law enforcement," Martin Decl. ¶ 32, is insufficient on the facts of this case. See *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 66–67 (D.C. Cir. 1986) (holding agency cannot apply a "'blanket exemption' for 'all records relating to an ongoing investigation'" (quoting *Campbell v. U.S. Dep't of Health and Human Servs.*, 682 F.2d 256, 259 (D.C. Cir. 1982))). In its declaration, the IRS does not even mention 14 of the 22 columns, much less explain why disclosure of such columns as, for example, the "Primary Seizure Statute" or the "Seizure Type" (civil, administrative, or criminal), could possibly harm ongoing investigations. See *Prison Legal News v. Samuels*, 787 F.3d 1142, 1150 (D.C. Cir. 2015) (reiterating that under the categorical approach to applying exemptions, the "[t]he range of circumstances included in the category must 'characteristically support an inference that the statutory requirements for exemption are satisfied.'" (quoting *Nation Magazine*, 71 F.3d at 893)). On remand, we expect the agency to provide a more robust explanation of its use of Exemption 7(A) to redact all open investigations as a category.

As for the IRS's application of Exemption 7(F) to the Asset Description column, the district court abused its discretion in holding that the Institute's objection was forfeited. See *Trudel v. SunTrust Bank*, 924 F.3d 1281, 1286 (D.C. Cir. 2019). The

IRS originally applied Exemptions 6, 7(C), and 7(F) to withhold the entire Asset Description column. Only after the IRS complied with the district court's June 5, 2018 order— requiring production of data in the Asset Description column it had withheld under Exemptions 6 and 7(C), *Institute for Justice*, 340 F. Supp. 3d at 43—did the types of data in that column become apparent. Only then could the Institute recognize that the IRS appeared to be applying Exemption 7(F) to redact information beyond that which "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).

This context shows that the Institute challenged the IRS's reliance on Exemption 7(F) at its first opportunity—after the IRS submitted its newly redacted production to the court in response to the court's June 5, 2018 Order. Compare IRS's "Notice of Compliance" (Sept. 4, 2018), J.A. 1061–62, with the Institute's Response (Sept. 18, 2018), J.A. 1064–66, asserting insufficiency of the former. The fact that the Institute did not object to the IRS's use of Exemption 7(F) to withhold a "target's street address"—the only information the IRS previously claimed a right to withhold from the Asset Description column under Exemption 7(F), Martin Decl. ¶ 49—does not mean that the Institute forfeited the right to object to the agency's actual—and evidently far broader—use of Exemption 7(F).

We leave in place only the district court's judgment in favor of the IRS on the applications of Exemption 7(C), which the Institute has not challenged—specifically, redaction of the Lead Agent, Program Area, Investigation Name, Investigation Number, Storage Location, and SEACATS Number columns.

15

\* \* \*

The judgment of the district court is reversed and the case is remanded.

*So ordered.*