# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 16, 2020          Decided April 2, 2021

No. 18-5356

STEPHEN AGUIAR,
APPELLANT

v.

DRUG ENFORCEMENT ADMINISTRATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00240)

*Stacie M. Fahsel*, appointed by the court, argued the cause for appellant. With her on the briefs was *Kannon K. Shanmugam*, appointed by the court.

*Stephen Aguiar*, pro se, filed the briefs for appellant.

*Johnny H. Walker*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: ROGERS, PILLARD and WALKER, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This appeal presents the question whether the Drug Enforcement Administration ("DEA") was required under the Freedom of Information Act ("FOIA") to create maps, like those used in DEA's investigation and introduced at appellant's criminal trial, based on Global Positioning System ("GPS") data from a tracking device DEA had attached to appellant's vehicle between January 23 and July 30, 2009. In response to appellant's FOIA request, DEA produced 351 spreadsheet pages listing latitude and longitude coordinate data generated by the tracking device. Finding this data unusable without access to the internet or topographical maps, appellant adopts court-appointed *amicus curiae*'s interpretation of FOIA's requirement that an agency "provide" a record in "any form or format" requested "if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B). He contends that the "underlying records here are the location of a GPS tracker at any point in time, and the map images . . . requested are simply a different form of that information." Amicus Br. 17.

DEA does not dispute that the map images are "readily reproducible" but views § 552(a)(3)(B) to "speak[] to different forms or formats of the same 'records,' not different expressions of the same 'information.'" Appellee Br. 10. DEA does not possess, and never itself created or stored the map images that appellant seeks. Asking DEA to convert the GPS coordinate data into maps in these circumstances would therefore require DEA to create new records rather than reproduce an existing record in another "form or format." FOIA does not obligate DEA to retain or create records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).

**I.**

Appellant was convicted in 2011 of federal narcotics charges based partly on GPS surveillance conducted by DEA. *See United States v. Aguiar*, 737 F.3d 251, 255 (2d Cir. 2013), *cert. denied*, 574 U.S. 959 (2014). At appellant's trial, DEA agent Richard Carter testified that he installed a GPS tracking device on appellant's Subaru Impreza on January 23, 2009. He explained that this tracking device returned longitude and latitude information at his command or at preset times and that a software program would automatically plot the device's location on Google maps ("GPS mapping software"), which DEA agents monitored. Agent Carter also testified that he "assisted in the preparation of some exhibits" to help explain the GPS tracking data to the jury. Trial Transcript at 127 (Apr. 1, 2011). The U.S. Attorney's Office in Vermont introduced into evidence exhibits based on DEA's GPS surveillance, including (1) binders of spreadsheets listing the latitudinal and longitudinal position of the tracking device at different times over the course of the investigation; (2) screenshots of agent Carter's computer screen showing the location on a map of the tracking device at specific times; and (3) maps depicting paths traveled by the tracking device over specific periods of time.

In August 2013, appellant submitted a FOIA request to DEA for a CD "containing the DEA computer file of all tracking information collected via GPS devices attached to [his] vehicles with all images and proprietary software associated with that information from January 23, 2009 thr[ough] July 30, 2009, the very same file used by DEA to prepare exhibits for trial." Ltr. Stephen Aguiar to Katherine Myrick, Chief, DEA FOIA/Privacy Act Unit, Records Mgmt. Section (Aug. 19, 2013). He stated that he wanted "to study and view the exact data and images DEA monitored while

agents were tracking [his] vehicle(s)." *Id*. DEA responded that "no records were located related to any images" and produced "351 spreadsheet formatted pages" listing coordinate data generated by the GPS tracking device. Ltr. Myrick to Aguiar at 2 (Mar. 21, 2014). Challenging the sufficiency of DEA's response, appellant renewed his request for a copy of the GPS mapping software and, alternatively, all GPS tracking data "including its corresponding satellite image plot on google maps at the lowest available altitude between 50-100 feet on the version of google maps in place at the time the GPS tracking of [his] vehicle(s) was performed by agents in 2009." Ltr. Aguiar to DEA Off. of Info. Pol'y (Apr. 1, 2014).

In January 2014, appellant filed a FOIA complaint in the district court here, challenging DEA's failure to produce the GPS mapping software or map images of the GPS coordinate data. The district court granted summary judgment to DEA. On appeal, this court appointed *amicus curiae* to present arguments in support of appellant's position. *See Aguiar v. DEA*, 865 F.3d 730, 734 (D.C. Cir. 2017). Concluding that DEA had failed to demonstrate it was entitled to judgment as a matter of law on whether the GPS mapping software was an agency record under FOIA, *see id.* at 735–37, this court remanded the case and did not reach appellant's alternative request for the map images, *see id.* at 737. On remand, based on DEA's supplemental declarations, the district court granted summary judgment to DEA. *See Aguiar v. DEA*, 334 F. Supp. 3d 130, 147 (D.D.C. 2018). It held that the GPS mapping software was not an agency record under FOIA, *see id.* at 141–42, and that 5 U.S.C. § 552(a)(3)(B) did not require DEA to create map images visualizing the GPS coordinate data, *see id.* at 142–44. The district court also denied as futile appellant's August 2017 *pro se* motion for leave to file a complaint supplementing his amended complaint with six new claims under the Privacy Act, 5 U.S.C. § 552a. *See id.* at 145–47.

Appellant appeals the grant of summary judgment regarding the map images, conceding that FOIA does not require DEA to provide him a copy of its GPS mapping software, and the denial of his *pro se* motion for leave to file a supplemental complaint. This court reviews the grant of summary judgment *de novo*, *Judicial Watch, Inc. v. Dep't of Def.*, 913 F.3d 1106, 1110 (D.C. Cir. 2019), and the denial of leave to file a supplemental complaint for abuse of discretion, *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

## II.

FOIA instructs:

> In making any record available to a person . . ., an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.

5 U.S.C. § 552(a)(3)(B). FOIA, however, "only requires disclosure of documents that already exist, not the creation of new records not otherwise in the agency's possession." *Nat'l Sec. Counselors v. CIA*, 969 F.3d 406, 409 (D.C. Cir. 2020); *accord NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 162 (1975). The issue is whether the map images requested by appellant are a "readily reproducible" "form or format" of the GPS coordinate data, which DEA must produce pursuant to § 552(a)(3)(B), or altogether new records, which DEA has no duty to create, *Kissinger*, 445 U.S. at 152.

Amicus maintains that "the relevant record is the location information for each ping [identifying the date and time], not a spreadsheet," Amicus Br. 30, and that § 552(a)(3)(B) obligates DEA to provide this location information in appellant's

preferred map format because DEA has not disputed that this information is "readily reproducible" in that format, *see* Amicus Br. 20–25. Maps, in amicus' view, are definitionally another "form or format" of GPS coordinate data because "stating a longitude and latitude is simply a way to describe where on a map something is located." *Id*. at 21; *see id*. at 27–28. Anything that presents the same underlying information without altering its substantive contents, amicus suggests, is another "form or format" of a record. *See id*. at 21–22. For instance, a "scatter plot" is another "form or format" of a "list of values for two variables." Amicus Reply Br. 6. DEA, by contrast, views § 552(a)(3)(B) "not [to] require agencies to provide 'information' in any form or format requested," but simply "to provide their 'record[s]' in readily reproducible forms or formats." Appellee Br. 15. DEA maintains that the record "here is a spreadsheet of numerical coordinates." *Id*. As DEA sees it, the requested map images are not different forms or formats of this record, but instead "new records with additional and expanded content." *Id*. at 11. For the following reasons, we conclude that amicus' interpretation of § 552(a)(3)(B) lacks support in the statutory text, context, purpose, and history. *See Bailey v. United States*, 516 U.S. 137, 144–48 (1995); *Saadeh v. Farouki*, 107 F.3d 52, 57–58 (D.C. Cir. 1997); *see also Proffitt v. FDIC*, 200 F.3d 855, 860 (D.C. Cir. 2000).

Section 552(a)(3)(B), by its plain terms, speaks to the "form or format" of a "record." Although FOIA does not define the term "record," *Aguiar*, 865 F.3d at 735, a "record" includes "any information that would be an agency record . . . when maintained by an agency in any format, including an electronic format." 5 U.S.C. § 552(f)(2). The Report of the House Committee on Government Reform and Oversight explained that § 552(f)(2) "does not broaden the concept of an agency record," while noting that FOIA occasionally uses the

terms "record" and "information" interchangeably. H.R. Rep. No. 104-795, at 19–20 (1996). But even assuming for purposes of argument that the relevant "record" is the location information and not a spreadsheet, amicus' broad interpretation of the phrase "form or format" is unpersuasive. The dictionary definitions marshaled by amicus that the terms "form" and "format" refer to physical attributes and general makeup, as opposed to substance, do not establish that two things presenting the same substantive information are always forms or formats of one another. *See* Amicus Reply Br. 5 (citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 458 (10th ed. 1993) and *Public Citizen v. Carlin*, 184 F.3d 900, 903 (D.C. Cir. 1999) (citing WEBSTER'S NEW INT'L DICTIONARY UNABRIDGED 992 (2d ed. 1942))). Neither, contrary to amicus' suggestion, does the inclusion of the modifier "any" before the phrase "form or format" in § 552(a)(3)(B). *See id*. The title of the enactment adding § 552(a)(3)(B) — "Electronic Freedom of Information Amendments of 1996" — "is of some interpretative use" and it suggests that the primary congressional concern was to provide for public access to electronic records. *Patchak v. Salazar*, 632 F.3d 702, 709 (D.C. Cir. 2011) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998)).

Nothing in § 552(a)(3)(B)'s purpose or history suggests that Congress intended to obligate agencies to organize information contained in a record in a FOIA requestor's preferred way solely for the requestor's convenience. In enacting the Electronic Freedom of Information Act Amendments of 1996, Congress provided that "agencies should use new technology to enhance public access to agency records and information." Pub. L. No. 104-231, § 2(a)(6), 110 Stat. 3048 (1996). Because a list of coordinates is "not usable" for appellant, who as a federal prisoner "does not have access to the internet or even to physical maps," amicus concludes that

"DEA is obligated to provide the data in . . . a comprehensible format." Amicus Br. 24–25; *see Aguiar*, 334 F. Supp. 3d at 135, n.1. Notwithstanding the generic statement identified by amicus, it points to nothing in § 552(a)(3)(B)'s legislative history supporting a categorical obligation on agencies to display requested information in a way usable or convenient for the FOIA requestor whenever doing so does not alter the information's substantive content.

Interpreting § 552(a)(3)(B) as imposing such an obligation on agencies in the circumstances here would likely also be in tension with this court's precedent holding that FOIA does not obligate agencies to "add explanatory material to a document" and that a FOIA "requestor must take the agency records as he finds them." *Yeager v. DEA*, 678 F.2d 315, 321–23 (D.C. Cir. 1982). Likewise, our precedent construing agencies' disclosure obligations under FOIA generally has not held them to vary with the characteristics or convenience of the requestor. *See, e.g.*, *id.* at 323; *Nat'l Sec. Counselors v. DOJ*, 848 F.3d 467, 471 (D.C. Cir. 2017); *Sample v. Bureau of Prisons*, 466 F.3d 1086, 1088 (D.C. Cir. 2006).

The court therefore cannot accept amicus' sweeping interpretation that maps are, as a matter of law, another "form or format" of coordinate data under § 552(a)(3)(B) merely because plotting coordinates on a map "displays them in an understandable form without altering their substance." Amicus Br. 21–22. The court leaves open the question whether and under what circumstances a duty of production would arise under FOIA when an agency technically stores information in one way, such as numerically as GPS coordinates, but typically accesses that information in another way, such as graphically as maps. Congress was acutely aware when it enacted the 1996 amendments that FOIA would apply to "yet-to-be invented technologies." H.R. Rep. No. 104-795, at 20 (1996). Because

evolving practices of data storage and use may blur the line between existing records and new ones, the court does not decide whether a map generated from coordinates in an agency's possession might, under circumstances not presented here, be another "form or format" of an agency record.

Today, the court need not define the precise scope of the phrase "form or format" in § 552(a)(3)(B) or identify the line distinguishing a "form or format" of a record from an entirely new record. Whatever that line, the record before this court shows that to produce the maps requested by appellant — like those viewed by DEA agents during their investigation or those introduced at appellant's trial by the U.S. Attorney's Office — DEA would have to create new records. As DEA suggests, producing the requested maps would require editorial judgment on DEA's part. *See* Appellee Br. 18.

FOIA "only obligates [an agency] to provide access to those [records] which it in fact has created and retained." *Kissinger*, 445 U.S. at 152. "Thus, although an agency is entitled to possess a record, it need not obtain or regain possession of a record in order to satisfy a FOIA request." *Yeager*, 678 F.2d at 321. Here, the exact map images viewed by DEA agents using the GPS mapping software during their real-time monitoring of appellant's vehicle, as distinct from the map images introduced at appellant's trial, were transient and "not . . . located with a reasonable amount of effort by a person familiar with DEA's record systems." Myrick 3rd Suppl. Decl. ¶ 16 (Dec. 18, 2017); Myrick 2nd Suppl. Decl. ¶ 2 (Nov. 10, 2015). Appellant acknowledges that DEA does not possess this GPS mapping software, which was "phased out and retired" before appellant made his FOIA request. Decl. of Paul M. Roy, Chief, DEA Infrastructure Support Unit, Admin. Support Section, Off. of Investigative Tech. ¶ 10 (Dec. 18, 2017); *see* Amicus Br. 14. The U.S. Attorney's Office in Vermont, with

some assistance from DEA, apparently prepared for appellant's trial the distinct map images introduced as exhibits. *See* Roy Decl. ¶ 14; Myrick 2nd Suppl. Decl. ¶¶ 4–5; Trial Transcript at 127 (Apr. 1, 2011). Declarations of DEA officials, which are "accorded a presumption of good faith," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), explain that "[i]t is unknown how the exhibits were created" and that "[t]o learn how the exhibits were created would require research and investigation." *See* Myrick 2nd Suppl. Decl. ¶ 5; *see also* Roy Decl. ¶ 14. Appellant has not challenged the adequacy of DEA's records search, which did not locate any map images or tracking information relating to DEA's investigation of appellant. *See* Myrick 2nd Suppl. Decl. ¶ 11; *see also Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004). DEA did not even possess the spreadsheets of GPS coordinate data that it ultimately produced for appellant, instead obtaining them from the U.S. Attorney's Office, as to which appellant has not pressed a FOIA request. *See* Myrick 2nd Suppl. Decl. ¶¶ 11–12. There is no suggestion of bad faith or misconduct by DEA in responding to appellant's FOIA request.

On this record, because DEA does not possess the GPS mapping software or any related map images and never created or retained the map images introduced at appellant's trial, FOIA does not obligate DEA now to create such map images in the first instance. *See Kissinger*, 445 U.S. at 152.

## III.

Appellant filed a *pro se* motion for leave to file a supplemental complaint proposing six new claims for monetary damages and declaratory relief under the Privacy Act, 5 U.S.C. § 552a, against DEA and two new defendants, "Unknown U.S. DOJ GPS Contractor" and "Executive Office for U.S. Attorneys." The district court properly denies a

motion to amend a complaint "as futile if the proposed claim would not survive a motion to dismiss." *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (citing *James Madison Ltd.*, 82 F.3d at 1099). The district court found that appellant's first claim was futile because it was "premised on the alleged withholding of materials that are either not agency records or have already been provided." *Aguiar*, 334 F. Supp. 3d at 145. It also concluded that appellant's remaining claims, even when "liberally" construed, *see Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002), are not cognizable under the Privacy Act or related to any cognizable civil-rights claim. *Aguiar*, 334 F. Supp. 3d at 145–47. Appellant fails to establish that the district court abused its discretion in denying his motion for leave to file a supplemental complaint. *See James Madison Ltd.*, 82 F.3d at 1099.

Accordingly, we affirm the grant of summary judgment to DEA and the denial of appellant's motion for leave to file a supplemental complaint.